IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEROME WALKER,

                                                                          OPINION AND ORDER

                Plaintiff,

                                                                                   19-cv-613-bbc

     v.

CO ROBERT SHANNON, LT. FISCHER,
HSM JOLINDA WATERMAN AND
CAPTAIN DANE ESSER,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Jerome Walker is proceeding in this case on a claim that a correctional officer at Wisconsin Secure Program Facility delivered medication to him while wearing gloves contaminated with blood from another inmate. He also alleges that staff at the prison retaliated against him after he complained about the incident. Now before the court is defendants' motion for summary judgment. Dkt. #30. Because plaintiff has failed to submit evidence showing a violation of his constitutional rights, defendants' motion will be granted.

      From the parties' proposed findings of fact and the record, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

A.  The Parties and Background

      Plaintiff Jerome Walker was incarcerated at Wisconsin Secure Program

1

Facility at all times relevant to this case. All defendants worked at the prison: Robert Shannon was a correctional officer; Janet Fischer was a lieutenant; Dane Esser was a captain; and Jolinda Waterman was the health services manager.

Plaintiff has diabetes and uses insulin injections to manage his blood glucose levels. At Wisconsin Secure Program Facility, some diabetic inmates are allowed to check their own glucose levels and administer their own insulin. However, if an inmate abuses the privilege of administering his own insulin, the privilege of self-administering is taken away.

At medication delivery times, correctional officers distribute diabetic kits to those inmates who monitor their own glucose levels. Each diabetic kit is contained in a small zip-up case. The case contains a glucose meter, testing strips, alcohol pads and gauze. When distributing a kit, the officer places the case on the cell's trap door. The inmate takes the case and removes the contents. The inmate then applies the alcohol pad to the area where he will prick his finger, and the officer hands the inmate a lancet from the medication cart. The inmate uses the lancet to prick his finger to draw a small amount of blood. After the inmate uses the needle, it retracts completely back inside the lancet. The inmate tests the blood on the glucose meter, after which the inmate uses the gauze to clean any leftover blood. The inmate then relays his glucose level to the correctional officer, and the correctional officer checks the glucose level against a chart on the medication cart. If the inmate needs insulin, the officer gives it to the inmate in a sealed package from the cart. The inmate uses a syringe from the insulin kit to draw out and inject the amount of insulin he needs. After the insulin is injected, the needle retracts

back inside the syringe where it is totally encased. The officer records how much insulin the inmate used, and the inmate places the syringe and lancet on the trap door. The officer picks up the syringe and lancet and places both in a sharps container on the cart. The officer does not touch the needle in the syringe or the sharp side of the lancet. The inmate throws used testing strips, used alcohol pads and used gauze in his garbage.

Plaintiff bleeds more than some inmates do during glucose testing. He states that the gauze provided is not always sufficient to clean up the amount of blood he produces, and that his hands are often bloody after he tests his glucose. He says that because he may have blood on his hands, it is possible that he gets blood on the back side of the syringe or lancet where the officers may touch it, even though the needles have retracted inside the syringe and lancet.

B. Defendant Shannon's Delivery of Medications to Plaintiff

Defendant Shannon's job duties as a correctional officer included the delivery of prescribed medications and diabetic kits to inmates. On April 15, 2019, he passed out medications and diabetic kits to inmates in unit C. Prior to medication pass, Shannon put on gloves. He started passing out medications and diabetic kits on range 1 of unit C, where plaintiff was housed, at approximately 8 p.m. (Plaintiff states that Shannon started medication delivery on range 4, but he has no evidence to support this assertion.) Shannon started medication delivery at cell 101, and he delivered medication to one inmate before he reached plaintiff's cell, which was cell 104. The first inmate who received

medication did not receive a diabetic kit. Shannon provided pills to the inmate by popping pills from a blister pack directly into a small pill cup. Shannon did not touch the pills, the inmate did not pass anything back to Shannon and Shannon did not get blood on his hands from the inmate. (Plaintiff attempts to dispute this, but he has no evidence to show that Shannon got blood on his gloves during medication pass to the first inmate.)

Plaintiff was scheduled to receive medications and a diabetic kit, and plaintiff was the first diabetic inmate to whom Shannon gave a diabetic kit during the evening medication pass. It was Shannon's practice to hand an inmate his diabetic kit before giving him his medication, so that the inmate could start opening the kit and laying out what he needed while Shannon retrieved the medication. Shannon gave plaintiff his diabetic kit, then popped plaintiff's controlled medication out of the pill pack into a pill cup. Shannon placed the pill cup on plaintiff's trap and told plaintiff to take the medication. (Inmates must take controlled medications in front of a security staff member to prevent inmates from stockpiling or misusing medication.) Plaintiff stated that he wanted to test his glucose first. Shannon ordered plaintiff to take the medication right away or not at all. Plaintiff again refused, and Shannon removed the pills from plaintiff's trap. Plaintiff then stated that he would take the medication, so Shannon put the medication cup back in the trap. Plaintiff took the medication cup inside his cell, but he did not take swallow the medication. Instead, he stated that he would take the medication after he finished his glucose test. (According to plaintiff, he had already started his diabetic test and had blood on his hands. He states that he told Shannon he did not want to take the medication

4

with blood on his hands.)   Shannon asked the sergeant on duty to call the lieutenant to plaintiff's cell.  (Shannon states that plaintiff responded by shouting, "Who the fuck do you think you are to tell me what to do.  You can't tell me what to do.  Get somebody else down here to finish my diabetic test."  Plaintiff denies saying this.  According to plaintiff, Shannon threatened him with a conduct report.  Shannon denies threatening plaintiff with a conduct report.)

Plaintiff then accused Shannon of having blood on his gloves.  Plaintiff told Shannon that he should change his gloves because they were contaminated with blood from another inmate, and that the inmate could have HIV.  Shannon refused to change his gloves.  (According to plaintiff, he saw blood on Shannon's gloves, and Shannon responded by saying that he was not going to change his gloves between every inmate because that would be a waste of gloves.  According to Shannon, he checked his hands and found no blood on his gloves.  He also did not think he could have gotten blood on his gloves between delivering medication to the first inmate he saw and delivering the medication to plaintiff.)

Defendant Lieutenant Fischer came to plaintiff's cell, and Shannon reported that plaintiff was refusing to take his controlled medication.  Fischer directed Shannon to continue medication pass while Fischer spoke with plaintiff.  Fischer persuaded plaintiff to take his controlled medication and completed plaintiff's diabetic testing and insulin with plaintiff.  Plaintiff told Fischer that Shannon had contaminated gloves or bloody gloves.  (According to plaintiff, Fischer responded that it was fine for Shannon not to change his

5

gloves between inmates when doing diabetic checks and handling used syringes and lancets because she used the same procedure when she was a correctional officer. Fischer denies saying this.)

After Fischer finished with plaintiff and after Shannon completed medication pass in the range, Fischer spoke with Shannon about plaintiff's allegation that Shannon had contaminated gloves. Shannon denied having contaminated gloves, and told Fischer that he had put on new gloves shortly before seeing plaintiff, who had been the first inmate on the range to have an insulin check. Fischer did not see any blood on Shannon's gloves. Fischer later confirmed that plaintiff had been the first inmate to whom Shannon had provided a diabetic kit.

Shannon issued plaintiff a conduct report for disobeying orders, being disrespectful and behaving in a disruptive manner during the incident. Plaintiff received seven days of cell confinement and loss of electronics.

### C.  Plaintiff Loses Privilege to Administer His Own Insulin

The next day, April 16, 2019, defendant Shannon provided plaintiff a diabetic test kit at approximately 3:15 p.m. Shannon thought that plaintiff was using more insulin than he should according to the diabetic glucose chart on the medication cart. (According to Shannon, plaintiff told him that he was taking 30 units of one insulin and 20 units of another insulin. Plaintiff denies that he used that much insulin and states that Shannon lied about how much insulin plaintiff was using.) Shannon reported plaintiff's use to

health services staff. A nurse in the health services unit stated that it appeared plaintiff was not following the guidelines for taking his insulin. Shannon documented what had happened in an incident report, which was sent to defendant Waterman, the health services unit manager.

On April 23, 2019, a health services nurse reviewed plaintiff's glucose and insulin log and determined that plaintiff was not using his insulin as ordered. The log showed that plaintiff had exceeded the proper amount of insulin on several occasions. (Plaintiff says defendants were relying on a fake diabetic log that Shannon had forged.)

On April 24, 2019, Nurse Sandra McArdle (not a defendant) saw plaintiff for evaluation and teaching him about his diabetes and the self-administration of insulin. McArdle reviewed plaintiff's glucose log with him and told him that, in several instances, plaintiff was either over or under administering his insulin. She discussed with plaintiff the importance of receiving the appropriate amount of insulin at the appropriate times. An order was issued that health services staff would conduct plaintiff's glucose checks and administer his insulin for two weeks, and that plaintiff would return to the clinic for a follow-up appointment after that.

On May 8, 2019, McArdle saw plaintiff for a follow-up visit to discuss his diabetes. (According to McArdle, plaintiff told her that if he were allowed to administer his own insulin again, he would continue to administer however much insulin that he felt that he needed. McArdle states that plaintiff refused to acknowledge the risk of administering too much or too little insulin. According to plaintiff, he told McArdle that

7

he had not abused his insulin and that he had been taking the required amounts. He says that he told McArdle that if he was allowed to administer his own insulin, he would continue to take his prescribed doses.)

After reviewing McArdle's notes from the visit, defendant Waterman decided that plaintiff could no longer administer his own insulin.

OPINION

Plaintiff was granted leave to proceed on the following claims:

(1) defendant Shannon violated plaintiff's Eighth Amendment rights by knowingly using gloves that were contaminated with another inmate's blood to deliver medication and a diabetic test kit to plaintiff;

(2) defendant Fischer violated plaintiff's Eighth Amendment rights by failing to direct Shannon to change his gloves despite knowing that Shannon was using contaminated gloves;

(3) defendant Esser violated plaintiff's Eighth Amendment rights by failing to train Shannon about the importance of changing contaminated gloves;

(4) defendant Shannon violated plaintiff's First Amendment rights by issuing him a conduct report in retaliation for his complaining about Shannon's use of contaminated gloves; and

(5) defendant Waterman violated plaintiff's First Amendment rights by rescinding plaintiff's ability to administer his own glucose in retaliation for plaintiff's complaining about Shannon's use of contaminated gloves.

Defendants have moved for summary judgment on all of plaintiff's claims. I address the parties' arguments below.

8

A. Eighth Amendment

The Eighth Amendment prohibits "cruel and unusual punishment." A prison official violates the Eighth Amendment if the official acts with "deliberate indifference" to a "substantial risk of serious harm" to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Deliberate indifference" means that the officials are aware that the prisoner faced a substantial risk of serious harm or "'excessive risk to [the prisoner's] health or safety,'" but disregard the risk by consciously failing to take reasonable measures to prevent it. Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (quoting Farmer, 511 U.S. at 837); Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). A prison official also violates the Eighth Amendment if he or she subjects a prisoner to a condition that "exceeded contemporary bounds of decency of a mature, civilized society." Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994).

Plaintiff contends that defendant Shannon subjected him to an excessive risk to his health and safety by knowingly distributing medication and a diabetic kit with gloves contaminated with blood from another inmate. For purposes of summary judgment, I will assume that plaintiff saw what he thought was blood on Shannon's gloves. Landmark American Ins. Co. v. Deerfield Construction, Inc., 933 F.3d 806, 809 (7th Cir. 2019) (plaintiff's version of events must be accepted as true for purposes of summary judgment, so long as it is supported by admissible evidence). However, defendants have produced evidence showing that there was no chance that Shannon got blood on his gloves from another inmate before he delivered plaintiff's medication to him. The evidence shows that

9

Shannon had put on clean gloves before starting medication delivery, that he had delivered pills to only one other inmate before approaching plaintiff's cell and that the first inmate had not needed a diabetic kit and had not passed anything back to Shannon. No reasonable jury could conclude that Shannon's gloves had been contaminated with blood from another inmate during medication pass.

It is theoretically possible that Shannon got blood on his gloves from another source, such as himself, without realizing it. But there is no evidence in the record to support such a finding—it would be mere speculation. Herzog v. Graphic Packaging Int'l, Inc., 742 F.3d 802, 806 (7th Cir. 2014) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Morever, even if there was evidence showing that Shannon's gloves could have been contaminated by another source, plaintiff has not shown that he faced any substantial risk of serious harm from Shannon's alleged use of contaminated gloves. It is undisputed that Shannon did touch plaintiff's medication with his gloves, because Shannon popped pills from a blister pack directly into a medication cup. In addition, plaintiff's diabetic supplies were contained in an enclosed kit, which included alcohol swabs for plaintiff's use. Thus, plaintiff asserts only the mere possibility of an infection from Shannon's gloves, but that mere possibility is not sufficient to withstand summary judgment on an Eighth Amendment claim. Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020) (affirming summary judgment on Eighth Amendment claim against prisoner because, "even viewing the evidence as he urges, he did not show that he experienced any cognizable harm"); Walker v. Leibert, No. 20-3487, 2021

WL 1574432, at *2 (7th Cir. Apr. 22, 2021) ("[T]o the extent Walker seeks damages based on the risk of what could have happened to him as a result, that risk is not actionable under § 1983 without actual injury."); Conner v. Schwenn, 821 F. App'x 633, 635 (7th Cir. 2020) (Eighth Amendment claim based on sanitation problems at prison dismissed because plaintiff alleged only "possibility of infection—he has not alleged that the risk is substantial, much less that he was actually injured by that risk").

Plaintiff's arguments in opposition are not persuasive. First, he argues that Shannon should not have been passing out medication at all, because Shannon had not taken adequate training regarding glove-wearing and medication distribution to inmates. Plaintiff submitted a transcript showing all of Shannon's training courses in support of the argument. However, whether Shannon had taken proper training is not determinative of whether there was a constitutional violation. The question for plaintiff's Eighth Amendment claim is whether Shannon deliberately ignored a known risk of substantial harm to plaintiff. Shannon's training transcript does not resolve that question.

Second, plaintiff says that Shannon stated that he would not change gloves because it would be a waste of gloves. However, this does not prove that Shannon knew he had contaminated gloves. Accepting plaintiff's version of events as true shows only that Shannon did not think it was necessary to change his gloves between every cell at which he distributed medication.

Third, plaintiff points out that he got tested for HIV because he was worried about Shannon's contaminated gloves. However, plaintiff does not say that he tested positive

11

for HIV or that he suffered from any other disease or infection as a result the incident with Shannon.  And plaintiff's own request to be tested for HIV does not prove that there was a substantial risk that he could have contracted HIV from Shannon's gloves.

Plaintiff's arguments regarding defendants Fischer and Esser are also not persuasive. Plaintiff has submitted no evidence showing that Fischer knew or thought that Shannon was using contaminated gloves, so she cannot be liable for failing to order Shannon to change his gloves.  As for Esser, plaintiff says that Esser should be liable for failing to insure that Shannon was properly trained to distribute medication.  However, plaintiff has submitted no evidence showing that Esser was responsible for designing training materials for correctional officers.  And even if plaintiff had produced such evidence, plaintiff has failed to show that deficient training designed or provided by Esser caused Shannon to violate plaintiff's constitutional rights.  Accordingly, defendants Shannon, Fischer and Esser are entitled to summary judgment on plaintiff's Eighth Amendment claims.

B.  <u>First Amendment</u>

Plaintiff contends that defendant Shannon and Waterman retaliated against him in violation of his First Amendment rights after he complained about defendant Shannon's using contaminated gloves to deliver medication and insulin kits.  The First Amendment prohibits prison officials from retaliating against prisoners for engaging in activity protected by the First Amendment.  To succeed on a retaliation claim under the First Amendment, plaintiff submit evidence showing that:  (1) he was engaging in activity

12

protected by the Constitution; (2) the defendant subjected plaintiff to adverse treatment because of plaintiff's constitutionally protected activity; and (3) the defendant's conduct was sufficiently adverse to deter an ordinary prisoner from engaging in the protected activity in the future. Gomez v. Randle, 680 F.3d 859, 866-67 (7th Cir. 2012); Bridges v. Gilbert, 557 F.3d 541, 555-56 (7th Cir. 2009). Plaintiff's claims against Shannon and Waterman fail on the second element of his retaliation claims.

Plaintiff has not submitted evidence showing that Shannon gave him a conduct report because plaintiff complained to health services or anyone else about Shannon's use of contaminated gloves. Instead, the evidence shows that Shannon drafted the conduct report to plaintiff on the same day as the incident itself. Dkt. #36-1. There is no evidence that Shannon knew that plaintiff had complained to anyone beside defendant Fischer about Shannon's alleged use of contaminated gloves. Fischer had already determined that Shannon did not have contaminated gloves and had made no error, so no reasonable jury would conclude that Shannon was motivated by plaintiff's complaint to Fischer to draft a conduct report. Instead, the evidence shows that Shannon issued the conduct report because plaintiff had refused to take his controlled medication when ordered. It is undisputed that plaintiff refused to take the medication when directed and that plaintiff began arguing with Shannon. Based on this undisputed evidence, no reasonable jury could conclude that Shannon acted in retaliation for plaintiff's exercise of his First Amendment rights.

As for defendant Waterman, plaintiff contends that Waterman took away plaintiff's

ability to self-administer insulin in retaliation for his complaints about Shannon. However, plaintiff provides no reason why Waterman would be upset that plaintiff had complained about Shannon. Moreover, the evidence shows that Waterman decided that the health services staff should administer plaintiff's insulin after Nurse McArdle reported that plaintiff had refused to acknowledge the risks of giving himself too much or too little insulin. Plaintiff argues that McArdle was lying and that she relied on a falsified diabetic log in her report to Waterman. But even if this was true, it is not evidence that Waterman had a retaliatory motive. Instead, the undisputed evidence shows that health services staff told Waterman that plaintiff was misusing his insulin and refused to acknowledge the risks from his behavior. Based on this information, and not because of plaintiff's protected conduct, Waterman decided that health services staff should provide plaintiff's insulin. Accordingly, defendants Shannon and Waterman are entitled to summary judgment on plaintiff's First Amendment claims.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Robert Shannon, Janet Fischer, Dane Esser and Jolinda Waterman, dkt. #30, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 27th day of April, 2021.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge